**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LINDA WATERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. CIV-19-333-RAW-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Linda Waters (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. She has a high school education and worked in the past as an animal breeder. Claimant alleges an inability to work beginning on September 22, 2015, due to limitations resulting from fibromyalgia, degenerative disc disease, disorders of the spine (lumbar), osteoarthritis, chronic and severe pain, migraine headaches, depression, bilateral carpal tunnel syndrome, and side effects of medication (drowsiness).

### Procedural History

On January 16, 2017, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42

U.S.C. § 401, *et seq*.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On October 5, 2018, ALJ Lantz McClain conducted a video hearing from Tulsa, Oklahoma. Claimant participated from Poteau, Oklahoma. On December 4, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 24, 2019, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly weigh the opinions expressed on medical source statements by her treating physicians, Danny Silver, M.D., Wanda McMicheal, M.D., and Adam Sewell, M.D.;[2] (2) failing to include all of her limitations in the RFC; (3) failing to properly assess her

---

[2] It is unclear from Claimant's briefing whether she is challenging the ALJ's decision regarding Dr. Sewell's opinion. She does not cite his name in the argument heading, but she refers to his medical source statement in her argument. For this reason, the Court will address Claimant's argument as to Dr. Sewell's opinion.

4

fibromyalgia; and (4) failing to find her headaches were a severe impairment.

### Consideration of Opinion Evidence

In his decision, the ALJ found Claimant suffered from fibromyalgia, degenerative disc disease, and osteoarthritis. (Tr. 14). He determined Claimant could perform a full range of light work, including occasionally lifting and/or carrying twenty pounds and frequently ten pounds, standing and/or walking at least six hours in an eight-hour workday, and sitting for at least six hours in an eight-hour workday.

Based upon Claimant's RFC and her age, education, and work experience, the ALJ determined a finding of "not disabled" was directed by Rule 202.21 of the Medical-Vocational Guidelines (the "grids"). Thus, he concluded Claimant was not disabled at any time from September 22, 2015, her amended onset date, through the date last insured. (Tr. 27).

Claimant contends the ALJ failed to properly evaluate the opinions of her treating physicians, Dr. Silver, Dr. McMicheal, and Dr. Sewell. She makes general arguments that the ALJ erred in the analysis and weighing of the opinions, stating that the opinions were entitled to greater weight because Claimant's treating physicians were in the best position to assess her limitations. Other than generally mentioning the factors used to weigh medical opinions, Claimant does not specifically challenge

5

the reasons given by the ALJ for his determination that the opinions were entitled to "very little weight."

Regarding Dr. Sewell, the ALJ discussed his treatment notes in detail in the decision. Dr. Sewell treated Claimant from March of 2015 through June of 2015. (Tr. 20, 412-525, 1023-81). Dr. Sewell completed a medical source statement for Claimant on July 23, 2015. The ALJ detailed his findings, which included limitations that Claimant could only sit up to three and a half hours, stand and/or walk up to two and a half hours, and lift and/or carry up to five pounds occasionally and never lift and/or carry five pounds or more. He determined Claimant would be absent from work more than four days per month due to her impairments, she would need to elevate her feet during the day, she required a sit/stand option, and would need to recline or lie down during her breaks during the workday. He also included several postural limitations. (Tr. 23, 1083-84).

The ALJ afforded "very little weight" to Dr. Sewell's opinion. Citing to the evidence, he first noted Dr. Sewell saw Claimant on six occasions over a three-month period, and he consistently noted over these visits that Claimant's pain was well-controlled, she had normal and equal strength in all upper and lower extremities, her gait and station were consistently normal, her tandem walking, heel walking, and toe walking were all consistently normal, no edema, and normal spine alignment. He pointed out that three of

Claimant's visits addressed her desire to lose weight and weight loss medication and another involved her complaints of excessive sleepiness based upon a medication change she requested. The ALJ determined that the significant limitations found by Dr. Sewell were not supported by the limited period he cared for Claimant, the conservative nature of her treatment, and the longitudinal view of the medical evidence. (Tr. 23).

Regarding Dr. Silver, Claimant's pain management specialist, the ALJ thoroughly discussed his treatment of Claimant. (Tr. 20-21, 581-701, 1364-1410, 1573-92). He discussed several of Dr. Silver's treatment records in detail. He also summarized Dr. Silver's testimony at Claimant's administrative hearing. (Tr. 18-19, 143-48). The ALJ further addressed Dr. Silver's medical source statement completed on May 3, 2018. The ALJ set out the functional limitations imposed on Claimant by Dr. Silver, including that Claimant could sit, stand, and walk four hours in an eight-hour workday and lift and/or carry up to ten pounds frequently and up to twenty pounds occasionally. He noted that several of Dr. Silver's other opinions were identical to those of Dr. Sewell. Dr. Silver also determined Claimant's pain would constantly interfere with her attention and concentration, and she would require unscheduled breaks. (Tr. 23-24, 1359-60).

The ALJ assigned "very little weight" to Dr. Silver's opinion or testimony. He found Dr. Silver's opinion and testimony were not

7

"particularly consistent with the medical evidence." As an example, he referenced that Dr. Silver's testimony that Claimant's physical problems would cause her to miss four days of work per month was inconsistent with his treatment findings that Claimant's pain was controlled to a functional level with her current treatment regimen. Dr. Silver's testimony and opinion were unsupported by statements in his treatment records that Claimant's goals focused on her leisure activities, hobbies, and taking care of her dogs, which involved her private, family business. His records indicated Claimant engaged in activities requiring greater functional abilities, including taking care of her dogs, gardening, and canning picante sauce. The ALJ considered Dr. Silver's specialization in pain management and his long-term relationship with Claimant, and he determined Dr. Silver's treatment notes did not provide objective evidence to support the degree of limitation reported by Claimant. He referenced that throughout her treatment with Dr. Silver, Claimant had sought disability while continuing to maintain her dog breeding business. He further relied on the conservative treatment Claimant received from Dr. Silver. (Tr. 24).

Regarding the opinions of Dr. McMicheal, the ALJ also discussed her treatment records in the decision. (Tr. 20, 1085-1188). He discussed the medical source statement completed by Dr. McMicheal in June of 2015, wherein she determined Claimant

could sit up to two or three hours in an eight-hour workday and stand and/or walk up to two hours in an eight-hour workday. Claimant could lift and/or carry up to five pounds occasionally. She also included several of the limitations found by Dr. Sewell and Dr. Silver regarding Claimant's absences and her need for breaks during the workday to elevate her feet, recline, or lie down. (Tr. 24, 1019-20). The ALJ further referenced Dr. McMicheal's statement from July of 2018, wherein she adopted Dr. Silver's functional limitations for Claimant from his May of 2018 medical source statement. (Tr. 24, 1363).

As with the other opinions, the ALJ assigned "very little weight" to Dr. McMicheal's opinions. The ALJ considered that Dr. McMicheal had served as Claimant's primary care provider since 2011, and that she examined Claimant every one to two months during their treatment relationship. The ALJ cited to examination findings from Dr. McMicheal wherein Claimant exhibited tenderness to palpation in her spine, upper extremities, and lower extremities and physical examinations showing Claimant had a normal gait and station, normal tandem walking, and normal heel and toe walking. The ALJ relied on records which showed that Dr. McMicheal prescribed Claimant pain medication when she was between pain specialists, but her treatment of Claimant was mostly for general health issues. Dr. McMicheal did not oversee Claimant's treatment for fibromyalgia, degenerative disc disease, or osteoarthritis.

Thus, the ALJ concluded that Dr. McMicheal's opinions were not supported by the objective medical evidence or Dr. McMicheal's treatment records. (Tr. 24-25).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

As noted above, Claimant generally contends that the ALJ should have afforded greater weight to the opinions of Claimant's treating physicians, noting the pertinent regulations, but making

10

no argument as to why the reasons provided by the ALJ for affording "very little weight" to the three opinions was unsupported. As discussed herein, the ALJ discussed the treatment notes and opinions in detail in the decision. He provided adequate reasons for why he was assigning "very little weight" to the opinions. He also considered the other evidence in the record (Tr. 16-26), including the state examining physician's examination of Claimant in June of 2017 (Tr. 21, 570-71) and the opinions of the reviewing physicians from June of 2017 (Tr. 25, 176-85) and October of 2017 (Tr. 25, 189-204). He further took into consideration Claimant's testimony and function report and the third-party function report submitted by Claimant's sister. (Tr. 25). This Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). There is no error in the ALJ's consideration of the opinions of Dr. Sewell, Dr. Silver, and Dr. McMicheal.

**RFC Determination**

Claimant also contends that the ALJ failed to include several limitations in the RFC. She lists limitations that were not included by the ALJ in the RFC, all of which are from Dr. Silver's medical source statement, which was later adopted by Dr. McMicheal. The ALJ, however, was not required to include the limitations in the RFC. As discussed above, the ALJ found the opinions expressed

11

by Dr. Silver and Dr. McMicheal on the medical source statements were entitled to "very little weight." Thus, there was no reason for the ALJ to include these limitations in the RFC.

### Consideration of Fibromyalgia

Claimant next argues the ALJ erred in his assessment of her fibromyalgia. She appears to argue that the ALJ should not have applied the grids and determined she was disabled, based upon Social Security Ruling 12-2p, which addresses fibromyalgia. Claimant references the portion of the ruling, which indicates that the grids cannot be applied, but only used as a framework, if the widespread pain and other symptoms of fibromyalgia, such as fatigue, results in exertional limitations beyond the full range of work or results in nonexertional physical or mental limitations or environmental restrictions. *See* Soc. Sec. Rul. 12-2p, 2012 WL 3104869, at *6 (July 25, 2012).

As discussed herein, however, the ALJ provided reasons for affording "very little weight" to the opinions of Claimant's treating physicians, reasons which Claimant did not directly challenge. Moreover, the ALJ relied upon the opinions of the state agency physicians, who accounted for Claimant's fibromyalgia and other impairments, considered the evidence, and determined she could perform a full range of light work. They took into consideration Claimant's pain, noted that Claimant's pain management precluded further limitations, and determined that all

the potentially relevant Medical-Vocational Guidelines would direct a finding of "not disabled." (Tr. 180-84, 197-202). There is no error in this regard.

### Step Two and Four Analysis

Claimant contends the ALJ failed to consider her headaches as a severe impairment at step two and further failed to consider them in combination with her other impairments at step four.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 2000 WL 1028250, at *1 (10th Cir. 2000)(disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact Claimant was diagnosed with headaches does not translate into a medically determinable impairment.

To the extent Claimant contends her headaches should have been included as a severe impairment at step two, where an ALJ

13

finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

The ALJ determined Claimant's fibromyalgia, degenerative disc disease, and osteoarthritis were severe impairments. (Tr. 14). The ALJ found Claimant's history of carpel tunnel syndrome, history of temporomandibular joint (TMJ) disorder, and history of headaches did not cause more than minimal limitation in Claimant's ability to perform basic physical work activities and were therefore non-severe. (Tr. 14). Regarding Claimant's headaches, the ALJ referenced treatment records from Dr. Silver and dentist Steven Kilpatrick, DDS, which indicated Claimant's treatment for her headaches was successful. (Tr. 15, 1190, 627, 651, 661). Based on

this evidence, the ALJ determined Claimant's history of headaches was non-severe. (Tr. 15).

Although the ALJ did not find Claimant's history of headaches was a severe impairment at step two, he did consider her headaches in his decision and in formulating the RFC. In the summary of the evidence, the ALJ discussed Dr. Silver's hearing testimony that Claimant had chronic daily headaches. (Tr. 18, 143). In his treatment notes, however, Dr. Silver noted Claimant's pain was well controlled by medication "to a functional level." (Tr. 20, 593, 598, 603, 608, 639, 657, 690). Claimant took Imitrex for her headaches and reported that her treatment goals were being met, including increased productivity at work, spending quality time with family and friends, and pursuing hobbies and leisure activities. (Tr. 20, 582, 621, 646, 650, 654, 660). She denied malaise or headaches at her first visit with Dr. Sewell. (Tr. 20). At a visit with Dr. Silver in July of 2017, Claimant reported daily headaches but "not the worst headache" she had ever had. (Tr. 21, 623-24). Yet in August of 2017, Claimant reported her activities to Dr. Silver, which included planning her daughter's wedding and working in her vegetable garden. (Tr. 21, 582).

No error is found, as the ALJ's decision demonstrates that he did not simply disregard Claimant's history of headaches at step four. The record shows that the ALJ considered the effects of

both severe and non-severe impairments in his decision. 20 C.F.R. § 404.1545(a)(2).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE